**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Martin CARDENAS, a/k/a Raul Ramirez, Defendant–Appellant.**

No. 87–2655.

United States Court of Appeals, Tenth Circuit.

Jan. 11, 1989.
Rehearing Denied March 17, 1989.

guilty verdicts on all counts in the indictments: conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 846 (1981); possession with intent to distribute cocaine in violation of 21 U.S.C.A. § 841(a)(1) (1981); aiding and abetting in violation of 18 U.S.C.A. § 2 (1969); possession of a gun by an illegal alien in violation of 18 U.S.C.A. § 922(g)(5) (Supp.1988); shipping, transporting, or receiving a firearm with intent to commit an offense punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C.A. § 924(b) (1976); and carrying a gun during a drug trafficking crime in violation of 18 U.S.C.A. § 924(c) (Supp.1988).

Defendant Cardenas seeks reversal of the cocaine convictions, alleging an inadequate foundation for the admission of the cocaine based on the incomplete chain of custody and material alteration of the cocaine. In addition, Cardenas appeals his convictions under 18 U.S.C.A. § 922(g)(5) and 18 U.S.C.A. § 924(b) alleging insufficiency of evidence of possession of a firearm, and the erroneous definition of "carrying" under 18 U.S.C.A. § 924(c) used by the trial court.

## A. FACTS

On July 9, 1987, Martin Cardenas and Julian Rivera–Chacon were arrested in the underground parking lot in the area of the (then) Regent Hotel located in Albuquerque, New Mexico. Lawrence Villas also was arrested and indicted along with Rivera–Chacon and Cardenas. Villas entered into a plea agreement with the government and pled guilty to reduced charges in exchange for testifying against Cardenas and Rivera–Chacon. The evidence produced at trial culminating in guilty verdicts is as follows.

For several months prior to the arrests, Villas was under investigation by the Socorro Police Department for drug trafficking. Ray Mares, one of its law enforcement officers, supplied Villas' name to Lieutenant Lundy of the Bernalillo County

Paula Burnett, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Rhonda P. Backinoff, Asst. U.S. Atty., on the brief), Albuquerque, N.M., for plaintiff-appellee.

Frances Smylie Brown, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender with her on the brief), Denver, Colo., for defendant-appellant.

Before HOLLOWAY, Chief Judge, BRORBY, Circuit Judge, and ANDERSON,* District Judge.

BRORBY, Circuit Judge.

Defendants Martin Cardenas and Julian Rivera–Chacon were tried jointly in the United States District Court for the District of New Mexico. A jury rendered

---

* The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

Sheriff's Department. Lieutenant Lundy, in turn, enlisted the aid of Greg Gunter and Eddie Montoya, also of the Bernalillo County Sheriff's Department, in the investigation of Villas.

At trial, Villas testified that Rivera–Chacon was his sole source of cocaine and that they had planned the drug transaction. On July 9, Rivera–Chacon and Cardenas were in the parking lot to sell cocaine to Gunter and Montoya and that he, Villas, was merely the go-between. Villas testified that he approached Cardenas' vehicle as planned; that Rivera–Chacon gave Villas a sample of the cocaine which was wrapped in currency for Gunter to try prior to the sale; that Villas took the sample up to the hotel room; and that Gunter and Montoya simulated snorting the cocaine. Villas further testified that Gunter, satisfied that the "coke" was good, left the hotel with him to complete the transaction in the parking lot. They looked for Cardenas' truck, but it had moved. They got into Villas' truck to try to find Cardenas and Rivera–Chacon. Ultimately, the operation concluded when Officer Ruben Garcia's vehicle blocked-in two vehicles. The first vehicle contained Villas and undercover Officer Gunter. The second vehicle contained Cardenas as driver and Rivera–Chacon as passenger. Villas, Cardenas and Rivera–Chacon were all arrested at the scene.

Officers Montoya, Gunter and Garcia of the Bernalillo Police Department, Officer Mares of the Socorro County Sheriff's Office, and Special Agent Ortiz of the United States Bureau of Alcohol, Firearms and Tobacco, were all present. Lieutenant Lundy, searching Rivera–Chacon, found a gun hidden in his boot. Officer Garcia, conducting a full inventory search of Cardenas' truck, discovered a .25 caliber handgun behind a potato chip bag in an open dashboard compartment on the driver's side of the car; the open compartment was inches from the steering wheel, within an effortless reach of Cardenas. Under the front seat, Garcia found a brown paper bag containing a plastic sack with a white substance inside. Garcia handed the brown paper bag containing the plastic sack, and the .25 caliber handgun to Officer Gunter. From this moment, Officer Gunter had sole physical custody of this evidence.

Officer Mares testified that Gunter showed him a plastic sack containing a white substance. Mares was too busy to inspect the substance. He testified that he did not see a brown paper bag, nor did he see Garcia give the substance to Gunter. In addition, at trial Officer Mares could not absolutely identify the plastic sack containing the white substance as the plastic sack that Gunter displayed at the scene; however, he did state that the plastic sack exhibited at trial in every respect resembled the sack displayed to him at the arrest. No field test was performed on the substance. Officer Garcia accompanied Gunter to the station with the seized evidence. At the station, Mares assisted Gunter in tagging the evidence. Gunter then, unobserved, carried the *sealed* evidence bags to the evidence room on the third floor of the station. The evidence technician testified that no brown paper bag was submitted to her; that she is obligated to accept any evidence given her; and that ultimately the police officers decide what is evidence and what is not.

Since Officer Gunter committed suicide one month prior to the trial, he was not available to testify.

## I.

Defendant alleges that the plastic sack containing cocaine was improperly admitted into evidence on two bases: (1) the government failed to provide a sufficient chain of custody; and (2) there was a material alteration of the evidence. We disagree.

The standard of review of an appellate court when deciding the proper admission or exclusion of evidence at trial is abuse of discretion, defined in this circuit as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment. *United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987).

Controlling the admission or exclusion of real evidence at trial, Fed.R.Evid. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condi-

tion precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The rationale is that in the absence of showing that the evidence is what its proponent alleges, the evidence is simply irrelevant. E. Morgan, Basic Problems of State and Federal Evidence, 327 (5th ed.1976); *see also*, 7 J. Wigmore, Wigmore on Evidence § 2129 at 703 (Chadbourn rev.1978) (authenticity is an "inherent logical necessity").

■ The condition precedent to the admission of real evidence is met by providing the proper foundation. If the proffered evidence is unique, readily identifiable and relatively resistant to change, the foundation need only consist of testimony that the evidence is what its proponent claims. E. Cleary, McCormick on Evidence § 212 at 667 (3d ed.1984). However, when the evidence, as here, is not readily identifiable and is susceptible to alteration by tampering or contamination, the trial court requires a more stringent foundation "entailing a 'chain of custody' of the item with *sufficient completeness* to render it *improbable* that the original item has either been exchanged with another or been contaminated or tampered with." (Emphasis added.) *Id.* at 668; *accord United States v. Luna*, 585 F.2d 1, 6 (1st Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed. 2d 157 (1978); *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir.1960).

This circuit's controlling test for the admission and exclusion of real evidence under Fed.R.Evid. Rule 901(a) was clearly enunciated in *Reed v. United States*, 377 F.2d 891, 893 (10th Cir.1967) (citing *Brewer v. United States*, 353 F.2d 260 (8th Cir. 1965)). Before admitting or excluding real evidence, the trial court must consider the nature of the evidence, and the surrounding circumstances, including presentation, custody and probability of tampering or alteration. If, after considering these factors, the trial court determines that the evidence is substantially in the same condition as when the crime was committed, the court may admit it. *Reed*, 377 F.2d at 893.

The cocaine, not uniquely identifiable, requires a sufficient chain of custody to support its admission. However, the chain of custody need not be perfect for the evidence to be admissible. *United States v. Mora*, 845 F.2d 233, 236–37 (10th Cir.). *cert. denied*, —— U.S. ——, 109 S.Ct. 562, 102 L.Ed.2d 587 (1988); *United States v. Lepanto*, 817 F.2d 1463, 1466–67 (10th Cir. 1987). The well-established rule in this circuit is that deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; once admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence. *United States v. Brandon*, 847 F.2d 625, 630 (10th Cir.) *cert. denied*, —— U.S. ——, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988); *Mora*, 845 F.2d at 237 (citing *United States v. Gay*, 774 F.2d 368 (10th Cir. 1985)); *United States v. Drumright*, 534 F.2d 1383, 1385 (10th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976).

■ On appeal, defendant alleges that there was an insufficient chain of custody to support the trial court's admission of the cocaine since Officer Gunter, who had custody of it from the time of its initial seizure until he delivered it to the evidence room, was unavailable to testify. Based on this, defendant contends that the cocaine should not have been admitted since there was a "substantial break in the chain."

From the moment Officer Garcia seized the cocaine from Cardenas' truck, its whereabouts were accounted for. Testimony at trial by Officers Garcia and Mares shows that there was no substantial break in the chain. Upon seizing the cocaine, Officer Garcia handed it to Officer Gunter who, in turn, displayed it to Officer Mares. Admittedly Officer Mares could not absolutely identify the plastic sack containing white powder offered at trial as that seized from the truck. However, given that the plastic sack was not uniquely identifiable and considering his testimony that the evidence at trial in every respect resembled the evidence seized from the truck, the lack of absolute identification does not amount to an insufficient chain of custody. *See*

*United States v. Brewer,* 630 F.2d 795, 802 (10th Cir.1980) (lack of positive identification went to weight of evidence). After the arrests, Officers Garcia and Gunter drove directly to the police station where Gunter, in the presence of Mares, tagged and sealed the evidence. Officer Gunter then walked up three flights to the evidence room, delivered the evidence, tagged and sealed, to the evidence technician who secured it for testing. This was the only moment Officer Gunter was alone with the evidence; however, considering the brevity of time, the fact that the evidence was already tagged and sealed, and defendant's lack of any evidence of tampering or alteration at this point in the chain of custody, we do not consider it a substantial break resulting in alteration. The trial court need not rule out *every* possibility that the evidence underwent alteration; it need only find that the reasonable probability is that the evidence has not been altered in any material aspect. *Id.* at 802.

The fact that Officer Gunter was not available to testify is not determinative of the admissibility of the cocaine since the whereabouts of the cocaine was accounted for from its original seizure from Cardenas' truck until it was offered as evidence at trial. There is no rule that the prosecution must produce *all* persons who had custody of the evidence to testify at trial. *Gallego,* 276 F.2d at 917; *Pasadena Research Laboratories v. United States,* 169 F.2d 375, 381 (9th Cir.), *cert. denied,* 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401 (1948). Defendant's allegation as to the insufficiency of the chain of custody is unpersuasive.

■ Defendant also alleges that the evidence was "materially altered" and, as such, should not have been admitted. We disagree. The fact that the brown bag was not secured as evidence does not equate with material alteration.

Officer Garcia testified that when he found the plastic sack containing cocaine it was in a brown paper bag. (At trial, a brown paper bag was exhibited to demonstrate how it could conceal the identity of the cocaine.[1]) When Officer Gunter showed the cocaine to Officer Mares, the paper bag was gone. The reasonable inference is that the paper bag was inadvertently discarded, not that Officer Gunter tampered with the plastic sack of cocaine in the presence of four other law enforcement officers from three different departments. No evidence elicited at trial pointed to the alteration of the cocaine itself; and so long as the relevant features remain unaltered, the evidence is admissible. *United States v. Skelley,* 501 F.2d 447, 451 (7th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); Comment, *Preconditions for Admission of Demonstrative Evidence,* 61 Nw.U.L.Rev. 472, 484 (1966). Here, defendants were charged with and convicted of possession of cocaine, not possession of the brown paper bag. The absence of the brown paper bag is irrelevant to the evidentiary value of the cocaine. *Skelley,* 501 F.2d 447. Its absence does not give us reason to doubt that the powder was cocaine despite the lack of a field test. *Cf. Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (the police do not have a duty to perform any particular tests). After all, the purpose of the undercover activity was the purchase of cocaine.

" 'Absent some showing by the defendant that the [evidence has] been tampered

---

1. Essentially, it is uncontroverted that at the time of the seizure the plastic bag containing cocaine was found in a brown paper bag. Although the defendant did not appeal on the basis of due process violation, the government cited *United States v. Obregon,* 748 F.2d 1371, 1381 (10th Cir.1984), as controlling. In *Obregon,* the basis of appeal was the denial of a fair trial since the destruction of the cardboard box deprived the defendant of corroboration of his defense of lack of knowledge that he was in possession of cocaine. The court held that the box "was not of such materiality that Obregon was denied a fair trial...." In *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Supreme Court recently held that "[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* 109 S.Ct. at 334. Although both cases dispose of any due process issue, they do not address defendant's contention that the absence of the brown paper bag is a material alteration of the cocaine. We think the issues are distinct, not just distinguishable.

with, it will not be presumed that the investigators who had custody of [it] would do so.'" *United States v. Wood*, 695 F.2d 459, 462 (10th Cir.1982); *accord Lepanto*, 817 F.2d at 1466; *Gay*, 774 F.2d at 374; *O'Quinn v. United States*, 411 F.2d 78, 80 (10th Cir.1969).

The cocaine was properly admitted. Nothing in the record suggests that its admission was arbitrary, capricious, or unreasonable to warrant a finding of abuse of discretion.

## II.

Defendant Cardenas appeals from his convictions under 18 U.S.C.A. § 922(g)(5) and 18 U.S.C.A. § 924(c). As to 18 U.S.C.A. § 922(g)(5), he contends there was insufficient evidence to prove *possession* of a firearm; as to 18 U.S.C.A. § 924(c), he contends there was insufficient evidence to prove *possession* and *carrying* of a firearm during and in relation to a drug trafficking crime. We disagree.

In determining the sufficiency of evidence to sustain a guilty verdict, the appellate court must consider whether there is sufficient evidence, both direct and circumstantial, along with the reasonable inferences therefrom, from which a jury may find a defendant guilty beyond a reasonable doubt. *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.). *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). *United States v. Parnell*, 581 F.2d 1374, 1379 (10th Cir.1978), *cert. denied*, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed. 2d 44 (1979).

Admittedly, there is no evidence in the record that Cardenas was in actual possession of a firearm; however, possession in fact is not a prerequisite of his conviction, constructive possession being sufficient. As recently defined in this circuit, "'[a] person in constructive possession of an item *knowingly* holds the power to exercise dominion and control over it.'" *United States v. Medina–Ramos*, 834 F.2d 874, 876 (10th Cir.1987) (emphasis added) (quoting *United States v. Massey*, 687 F.2d

1348, 1354 (10th Cir.1982)). Here, Cardenas admitted to the police officers that he *knew* the gun was in the truck; when the gun was discovered, it was within effortless reach of his hands, more accessible than if it were in his own pocket. We find this sufficient evidence of his power to exercise dominion and control.

Citing *Medina–Ramos*, Cardenas argues that in addition to knowingly holding the ability to control an object, there must be an *act* by which that ability is manifested and implemented. We agree. The placement of the gun within inches of Cardenas' hands, together with the act of concealment of the gun behind the potato chip bag, satisfy the requisite act manifesting Cardenas' power to exercise dominion and control. Cardenas also argues that the fact that he made no furtive movements when approached by police officers negates possession. We disagree. Cardenas' truck was blocked in and he was surrounded by police officers from three different departments. His wisdom in seeing the futility of the use of the gun during his capture does not negate ultimate possession during the commission of the drug trafficking offense. Indeed, there was sufficient evidence to support the jury's determination that Cardenas was in possession of a firearm and we so hold.

## III.

For the first time in this circuit, the meaning of "carrying" to support a conviction under 18 U.S.C.A. § 924(c) must be construed.[2] Cardenas asserts that carrying firearms means exclusively to "wear, bear, or carry them *upon the person* or *in the clothing* or *in a pocket*, for the purpose of use, or for the purpose of being armed...." (quoting *Black's Law Dictionary* 194 (5th ed.1979) (emphasis added)). He contends that since he did not carry "upon the person" or "in the clothing," he was invalidly convicted under 18 U.S.C.A. § 924(c), and cites *United States v. Robertson*, 706 F.2d 253 (8th Cir.1983), as authority. In addition, he argues that transporta-

**2.** We attempt this based on a dearth of case precedent in other circuits as well.

tion does not equate with carrying; therefore, although one may be validly convicted of transporting, this does not mean, *ipso facto*, that one may be convicted of carrying. We think it significant to note that, faced with the unprecedented task of defining "carrying" under 18 U.S.C.A. § 924(c), the government failed to address the issue in its brief or at oral argument.[3]

■ As a preliminary matter, we point out that since Cardenas failed to object to the jury instruction's definition of carrying, we may only entertain this issue on appeal if we find plain error. Jury Instruction No. 17 reads in part, "[y]ou are also instructed that the word 'carry' includes when a defendant in *possession* of a firearm *transports* the firearm or causes the firearm to be transported." (Emphasis added.) We find no error in this instruction for the reasons set out below.

In construing the scope of a statute, we must first consider its language. *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 298–99, 78 L.Ed.2d 17 (1983); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). If the language is clear, it must be regarded as conclusive absent a contrary legislative intent. *Russello*. 18 U.S.C.A. § 924(c) provides in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime, including a crime of violence or drug trafficking crime, which provides for an enhanced punishment if committed by the *use* of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, *uses or carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

(Emphasis added.) Since we find the statutory language devoid of any guidance on the scope of "carrying," we look next to its legislative history. The record of the hearings and floor debates discloses that Congress made no attempt to define the scope of "carrying." Therefore, in an effort to construe what Congress intended, we apply the long-honored rule of statutory construction, *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of others), and hold that mere transportation of a firearm is not within the purview of § 924(c)(1). *See Becker v. United States*, 451 U.S. 1306, 1309, 101 S.Ct. 3161, 3162–63, 68 L.Ed.2d 828 (1981); *Ex Parte McCardle*, 74 U.S. 506, 513, 19 L.Ed. 264 (1868); *Public Serv. Co. v. Federal Energy Reg. Comm'n*, 754 F.2d 1555, 1567 (10th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986). In essence, if the legislature had intended *transportation* of a firearm to be a violation of § 924(c), it would have included it along with "carrying" or "using." "In spite of the esoteric sound of the *expressio unius* maxim, it is generally accurate to assume that when people say one thing they do not mean something else." 2A N. Singer, Sutherland Statutory Construction § 47.01 (Sands 4th ed.1984), and authorities cited.

We find further support for our position in 18 U.S.C.A. § 924(b),[4] the subsection immediately preceding § 924(c), in which Congress explicitly provided that "[w]hoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, ... ships, *transports*, or receives a firearm ... in interstate or foreign commerce," shall be in violation. (Emphasis added.) Surely, Congress knows how to use "transports" when it chooses; in § 924(c) it did not so choose, and we do not choose to legislate on the matter.[5]

---

3. The wisdom of the government's silence evades this court; such silence speaks of a failure to appreciate its duty to this court and to the principles of justice.

4. Cardenas was convicted under § 924(b) but does not appeal on that basis.

5. In *United States v. Barber*, 594 F.2d 1242, 1244 (9th Cir.) *cert. denied*, 444 U.S. 835, 100 S.Ct. 69,

62 L.Ed.2d 46 (1979), the Ninth Circuit simply declared that "carrying" includes "transporting" for purposes of 18 U.S.C. § 924(c). In one simple sentence, absent authority cited, it broadened the scope of a statute which now carries a mandatory five-year sentence. This does not comport with our tripartite system of government. *Tennessee Valley Authority v. Hill*, 437

However, our analysis does not end here. We have decided what carrying is not, but not yet what it is.

■ A careful reading of Jury Instruction No. 17 shows that the jury was instructed to find a simultaneous *possession* and *transportation* for the accused to be guilty of carrying under § 924(c); it does not equate transportation with carrying.[6] Defendant contends that "carrying" equates only with "bearing on the person or clothing." We disagree.[7] We do admit that criminal statutes will not be construed to include anything beyond their letter. *United States v. Bass*, 404 U.S. 336, 347–48, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971); *United States v. Sparrow*, 635 F.2d 794, 796 (10th Cir.1980), *cert. denied*, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 209 (1981). However, the rule of strict construction does not require that penal statutes be given the "narrowest meaning" that the words of the statute will allow. *United States v. Raynor*, 302 U.S. 540, 552, 58 S.Ct. 353, 358–59, 82 L.Ed. 413 (1938); *Singer v. United States*, 323 U.S. 338, 341–42, 65 S.Ct. 282, 284–85, 89 L.Ed. 285 (1945); *United States v. Bramblett*, 348 U.S. 503, 509–10, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955).

■ In an effort to construe the Congressional intent at the time of the enactment of § 924(c), we must begin our analysis with the meaning of "carrying" in

1968.[8] *See e.g., Perrin v. United States*, 444 U.S. 37, 41–45, 100 S.Ct. 311, 313–16, 62 L.Ed.2d 199 (1979) (the Supreme Court looked to the meaning of the term "bribery" at the time Congress enacted the Travel Act); *see also McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2879–81, 97 L.Ed.2d 292 (1987) (the Court looked at the meaning of "fraud" at the time Congress enacted the federal mail fraud statute). The legal consensus at the time of enactment of § 924(c) was that possession was a requisite element of "carrying a weapon in a vehicle." *See* 94 C.J.S. *Weapons* § 8(2) (1956) and accompanying citations ("The rule . . . is appropriately applied when a weapon is on, under, or behind the seat or cushion, or is between the seat and the cushion, or is on the floor, or in a pocket of the door or even in a receptacle on the running board." *Id.*); *see also* 79 Am.Jur.2d *Weapons and Firearms* § 9 and § 12 (1975) (carrying a concealed weapon in an automobile requires that the gun be in such proximity to make it immediately available for use). Since there is no evidence in the language of the statute or its legislative history that Congress intended a different meaning than the legal meaning in 1968,[9] we hold that when a motor vehicle is used, "carrying a weapon" takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle, itself, rather than

---

U.S. 153, 194, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117 (1978).

6. In *Barber*, the judge instructed that a " 'defendant is considered to have carried the firearm if he conveyed, transported or took the firearm with him. . . .' " *Id.* at 1244, n. 2, (quoting *United States v. Dixon*, 558 F.2d 919, 921 n. 1 (9th Cir.1977), *cert. denied* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1978)).

7. Although Cardenas urges this court to adopt his interpretation of *Robertson*, 706 F.2d 253, that the carrying must be on the person, we find *Robertson* too dissimilar factually to be persuasive. The defendant was charged with a violation of § 924(c) based solely on testimony that during the commission of the crime of extortion, a gun was seen in his desk drawer. *Robertson* did not entail the carrying of a weapon in a vehicle. In addition, *Robertson* was decided in 1983, one year prior to the 1984

amended version of § 924(c) in which Congress restricted the scope of the statute by requiring that the carrying or use of the firearm be *"during and in relation* to any federal crime of violence." (Emphasis added.) Arguably, the facts of *Robertson* are no longer within the scope of the present statute. Therefore, on two bases we refuse to adopt *Robertson*.

8. 18 U.S.C. § 924(c) was originally enacted in 1968 as part of the Gun Control Act of 1968, but not included in the original Gun Control bill.

9. Because "carrying" was judicially interpreted before the enactment of the 1968 version of § 924(c), we find it to be a legal term and "legal terms in a statute are presumed to have been used in their legal sense," absent Congressional intent to the contrary. Sutherland, § 47.30; *see also* § 50.03 and accompanying citations (common-law definitions carry over to statutes dealing with the same or similar subject matter).

the defendant's hands or pocket, and the requirement of possession, the exercise of dominion and control, consonant with the common legal definition of "carrying a weapon in a vehicle" at the time of the enactment of § 924(c), is precisely what distinguishes "carrying" from mere "transportation."

We AFFIRM the conviction under 18 U.S.C.A. § 924(c).