996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Vickie June HOGG, Defendant-Appellant.
 No. 91-6344.
 United States Court of Appeals, Tenth Circuit.
 June 7, 1993.
 
 Before TACHA and EBEL, Circuit Judges and O'CONNOR, District Judge.*
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 This case comes before us on direct appeal of the defendant's conviction in the United States District Court for the Western District of Oklahoma. Following a jury trial, the defendant was found guilty of: conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count I); possession of cocaine and cocaine base with intent to distribute in violation of 21 U.S.C. § 846 (Count II); causing another to travel in interstate commerce in furtherance of an illegal activity in violation of 18 U.S.C. § 1952(A)(3) (Count III); and travelling in interstate commerce in furtherance of an illegal activity in violation of 18 U.S.C. § 2 (Count IV). She was sentenced to 324 months imprisonment and 5 years supervised release on Count I, 324 months imprisonment and 4 years supervised release on Count II, and 60 months imprisonment and 3 years supervised release on both Counts III and IV. All terms were ordered to run concurrently. In addition, she was ordered to pay a special assessment of $50. She appeals her conviction and sentence asserting eight errors below. We affirm.
 
 FACTS[1]
 
 2
 The defendant was indicted along with six others (Charles Edward McIntyre, Clara Gary, Lenanier Brown, J.C. Chatman, Ronnie Miller and Kenneth Eugene Wright) for their involvement in a drug trafficking ring that transported powdered cocaine or cocaine hydrochloride ("cocaine") from Southern California to Oklahoma City, Oklahoma. Once transported, the cocaine was "cooked" and transformed into cocaine base, also known as rock cocaine or "crack" ("rock cocaine"), and sold on the streets.
 
 
 3
 The defendant was the girlfriend of Charles McIntyre, the mastermind of the drug trafficking ring. She handled some of the money and paid some of the bills associated with the business and was involved with the transportation, packaging, and distribution of the drugs.
 
 
 4
 In January 1990, the defendant was arrested along with McIntyre and Tashawn Kyle Cook at a bus station in Los Angeles, California. McIntyre and the defendant had recently purchased cocaine from their principal supplier in California, J.C. Chatman. They went to the Los Angeles bus station where the defendant purchased a one-way bus ticket for Cook, who was to transport the cocaine to Oklahoma. Cook, McIntyre, and the defendant were arrested by agents at the station, but the charges were ultimately dismissed after the search of Cook was found to be illegal and the cocaine was suppressed.
 
 
 5
 The defendant travelled to the Los Angeles area with McIntyre in July and August of 1990, to purchase cocaine. In August 1990, the defendant returned to Oklahoma by bus with Connie Davis, who had taped a kilo of cocaine to her body. The defendant passed the cocaine on to other employees of McIntyre and was present when it was cooked into rock cocaine. On some occasions, the defendant would assist in the weighing and packaging of the rock cocaine.
 
 
 6
 The defendant's trial was consolidated with that of Chatman, Miller, Wright, and McIntyre. The consolidated case was tried to a jury commencing on July 22, 1991. The defendant was found guilty on all four counts on July 30, 1991. In this appeal she alleges eight errors below: 1) unlawful application of 21 U.S.C. § 841, which she claims is void for vagueness; 2) improper calculation of her base offense level; 3) unlawful admission of hearsay documents; 4) improper application of the business records exception to the hearsay rule; 5) improper admission of evidence for which claim of custody had not been established; 6) refusal to excuse a juror for cause; 7) insufficiency of the evidence; and 8) prosecutorial comments on the defendant's refusal to testify. We affirm.[2]
 
 I. Computation of Base Offense Level
 
 7
 The defendant asserts that the sentencing court improperly computed her base offense level. The sentencing court attributed three separate quantities of cocaine to the defendant: the amount seized at the bus station in January 1990, the kilogram taped to Connie Davis' body and transported back to Oklahoma City in August 1990, and the five ounces that were given to the defendant from part of another shipment imported from California. The court aggregated the three quantities finding a total of 1.554 kilograms and assessed a base offense level of 38. The defendant contends that the court erroneously attributed these quantities to her, and improperly classified the three quantities as rock cocaine rather than powdered cocaine.
 
 
 8
 We review the sentencing court's factual determinations under a clearly erroneous standard. United States v. Easterling, 921 F.2d 1073, 1077 (10th Cir.1990). This includes the calculation of drug quantities. United States v. Slater, 971 F.2d 626, 638 (10th Cir.1992). Under the Sentencing Guidelines, factual determinations need only be made by a preponderance of the evidence. Easterling, 921 F.2d at 1077.
 
 
 9
 We find that the record supports the quantity of drugs attributed to the defendant as well as the classification of those drugs as cocaine base. The sentencing judge found that the defendant was involved with the conspiracy. The testimony at sentencing could support a finding that the conspiracy dealt with at least 24, and maybe as many as 72, kilograms of rock cocaine. Yet the sentencing judge limited the amount attributable to the defendant to 1.554 kilograms, which were just the three amounts discussed above in which the defendant was shown to have had a direct involvement.
 
 
 10
 The defendant argues that the cocaine seized at the bus station was originally in six baggies, that the samples were mixed and that because one or more of the baggies may have only contained dilutents, it was improper to aggregate the weights. This court has held that estimates of drug quantities are permissible, so long as the information supporting the estimate has a minimum indicia of reliability. Easterling, 921 F.2d at 1077. Furthermore, this court has rejected the argument that only the quantity of pure drug contained in a mixture should be used in calculating offense levels. United States v. Dorrough, 927 F.2d 498, 502 (10th Cir.1991); see United States v. Leazenby, 937 F.2d 496 (10th Cir.1991) (holding that weight of paper included in determining quantity of LSD).
 
 
 11
 The defendant also argues that the undisputed evidence indicates that the cocaine carried by Connie Davis from California was powder and not rock cocaine. However, it is also undisputed that this powder cocaine was taken to the defendant's apartment in Oklahoma City where it was cooked and transformed into rock cocaine. The defendant was present when the powder was cooked into rock cocaine, and, therefore, as a member of the conspiracy, she can be held accountable for the quantity drugs in rock cocaine form.
 
 
 12
 The defendant also objects to the testimony of Officer Williams that five ounces of a shipment brought in from California was delivered to the defendant on February 26, 1991. That testimony was apparently based upon information received from Connie Davis who later attempted to recant her position. However, the sentencing judge found the statements to be sufficiently reliable and to have been corroborated by other evidence.
 
 
 13
 Overall, we are unable to conclude that the trial judge committed clear error when it computed the defendant's basic offense level.
 
 II. Hearsay Documents
 
 14
 We have addressed the hearsay issues thoroughly in our McIntyre opinion. We add only the following with regard to this defendant. It is apparent that the reason that the district court allowed testimony from one of the officers about finding certain documents in defendant's possession containing the names of some of the other defendants was to link this defendant to the other coconspirators and not to establish the truth of the assertions contained in the documents themselves. The same was true of the American Express receipt (Exhibit 25) which was allowed into evidence. That was an appropriate ruling. During closing argument, however, the government attempted to broaden the use of this evidence by asserting that it showed this defendant paid the bills for McIntyre and that she was McIntyre's business manager. That was improper argument because it attempted to use the hearsay evidence for the truth of the assertions contained therein. The defendant objected to the government's closing argument at this point but that objection was overruled.
 
 
 15
 The government's closing argument in that regard was improper, but defendant does not challenge that part of the closing argument on this appeal. Instead, she challenges only the admission of the evidence in the first place. As we stated in McIntyre, that was not error. If defendant wanted to make sure that this evidence was not misused, she could have asked for a limiting instruction. It does not appear from the record before us that that was done. Accordingly, we find no error in the introduction of such evidence.[3]
 
 III. Chain of Custody
 
 16
 The defendant next contends that the district court erred when it admitted over the defendant's objection a bag of cocaine seized from the Los Angeles bus station without a sufficient showing of the chain of custody. We review the admission of evidence at trial for an abuse of discretion which consists of an arbitrary, capricious, whimsical, or manifestly unreasonable judgment. United States v. Cardenas, 864 F.2d 1528, 1530 (10th Cir.1989).
 
 
 17
 The proof required to establish a sufficient foundation for the introduction of evidence depends on the nature of the evidence. United States v. Clounts, 966 F.2d 1366, 1368 (10th Cir.1992). In this case, as in Clounts and Cardenas, the cocaine is not unique or resistent to alteration therefore a sufficient chain of custody was required to support its admission. Clounts, 966 F.2d at 1368; Cardenas, 864 F.2d at 1531-32. As we established in Cardenas:
 
 
 18
 when the evidence, as here, is not readily identifiable and is susceptible to alteration by tampering or contamination, the trial court requires a more stringent foundation "entailing a 'chain of custody' of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with."
 
 
 19
 864 F.2d at 1531 (quoting E. Cleary, McCormick on Evidence § 212 at 668 (3d ed. 1984)). The chain of custody need not be perfect and the prosecution need not produce all persons who had custody of the evidence to testify at trial. Cardenas, 864 F.2d at 1531, 1532.
 
 
 20
 In this case, we find that the prosecution presented a sufficient chain of custody to justify the admission of the evidence. Officer Maples testified that he was present when the cocaine was seized, he personally turned the evidence over to Officer Woosner, he accompanied Woosner to the Los Angeles police station, he was present when the evidence was sealed, he accompanied Woosner to the Post Office, and he was present when the evidence was mailed to the DEA laboratory. The evidence was sent via certified mail. Brian Henderson, a forensic chemist at the DEA Southwest Laboratory in National City, California, testified that he received the sample from the evidence custodian, performed numerous tests verifying that the contents were cocaine, and later brought the evidence with him to trial.
 
 
 21
 The defendant contests the sufficiency of the chain of custody questioning the weight, color, composition, packaging and place where the evidence was mailed and tested.[4] "The well-established rule in this circuit is that deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; once admitted the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence." Cardenas, 864 F.2d at 1531. Furthermore, "the trial court need not rule out every possibility that the evidence underwent alteration; it need only find that the reasonable probability is that the evidence has not been altered in any material aspect." 864 F.2d at 1532. While the defendant raises some doubt about the reliability of the evidence, we are unable to conclude that the trial court committed error in admitting it.
 
 IV. Sufficiency of the Evidence
 
 22
 The defendant also alleges that the evidence presented at trial was insufficient to support the jury verdict. In evaluating the sufficiency of the evidence on appeal we examine the record, in light most favorable to the government, to determine if the evidence--both direct and circumstantial, together with all the reasonable inferences to be drawn therefrom--is such that a reasonable jury could find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1974); United States v. Hooks, 780 F.2d 1526, 1529 (10th Cir.1986). We are bound to accept the resolution of conflicting evidence and the assessment of the credibility of witnesses as they were found by the trier of fact. United States v. Youngpeter, 1992 U.S.App.Lexis 2293 (10th Cir.1993); United States v. Espinosa, 771 F.2d 1382, 1391 (10th Cir.1985).
 
 
 23
 The defendant first objects that the only testimony implicating her in the drug conspiracy was given by witnesses who were cooperating in exchange for leniency. It is the province of the jury, not an appellate court, to weigh the credibility of witnesses. Youngpeter, 1992 U.S.App.Lexis 2293; Espinosa, 771 F.2d 1391. In this case, Tashawn Cook, Darren Hogg and Talisha Woods all testified regarding the defendant's participation in the conspiracy. Although each of these witnesses were accomplices, and were cooperating in exchange for leniency, that alone is insufficient to render their testimony unworthy of belief.
 
 
 24
 The defendant also objects that she was never observed or found to be in possession of cocaine. However, there was direct testimony that she was in possession of cocaine, that she gave cocaine to other members of the conspiracy, and that she purchased a bus ticket for a member of the conspiracy to transport cocaine from Los Angeles to Oklahoma.
 
 
 25
 In light of the testimony of the witnesses, and the corroborating observations made by the police, we find that the evidence was sufficient to support the conviction of the defendant.
 
 V. Conclusion
 
 26
 For the foregoing reasons, the defendant's conviction and sentence are AFFIRMED.
 
 
 
 *
 The Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 A more complete description of the facts underlying the conspiracy can be found in United States v. McIntyre, 10th Cir. No. 91-6331
 
 
 [2]
 Several of the errors alleged by Vickie Hogg are identical to those raised by McIntyre in his appeal. Rather than repeat our discussion here we merely note that in that appeal we found that 21 U.S.C. § 841 was not void for vagueness, that the admission of documentary evidence under the business records exception did not amount to plain error, that the court did not err in refusing to dismiss the juror for cause, and that the prosecutor did not make improper statements concerning the defendant's refusal to testify. United States v. McIntyre, 10th Cir. No. 91-6331. For the reasons set forth in McIntyre, we likewise find that these allegations do not amount to reversible error in this case
 
 
 [3]
 Even if this defendant had preserved on appeal the propriety of the government's closing argument that such documents showed that defendant paid the bills, we would conclude it was harmless error. The remarks were brief and the evidence against defendant was strong. Thus, we find such remarks were not plain error, nor was there any substantial likelihood that they affected the outcome of the trial
 
 
 [4]
 Concerning the weight of the sample, the defendant would have us compare the rough estimate of the courier, Tashawn Cook, who surmised that there were "about 19 ounces" (538.6 grams); with the figure provided by the chemist. (412.4 grams). However, it is clear that Cook was providing a rough estimate and was approximating in different units of measurement. Furthermore, the estimate of Officer Maples who weighed the sample shortly after its seizure--i.e., approximate weight of "four hundred and fifty gross grams"--more closely approximates the chemist's figure
 The defendant also contends that the sample seized at the bus station could not have been the same one admitted into evidence because the evidence at trial was beige instead of white, had been ground into a powder from rock form, and had been removed from the six individual baggies and mixed. Officer Maples testified that the DEA chemists would grind up rock cocaine and mix samples "to get a good consistent test of the product."
 The defendant also contends that the chain of custody was broken because the evidence was mailed to the San Diego laboratory after it was seized, but was examined at a laboratory in National City. We note that according to the 1992 Federal Staff Directory the Office of Drug Enforcement Administration for the San Diego Division is located in National City, California. 1992 Federal Staff Directory at 549 (1992).