**UNITED STATES of America, Plaintiff,**

v.

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

Feb. 26, 1997.

Patrick Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Special Assistant U.S. Attorney, Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

### MEMORANDUM OPINION AND ORDER ON MOTIONS FOR *DAUBERT* HEARING

MATSCH, Chief Judge.

In their motions and briefs, filed as docket entries 3026, 3056 (with exhibits in docket

entries 3057 through 3060), 3102, 3130 and 3171, and in the oral arguments heard on February 20, 1997, the defendants assert that under the interpretation of Fed.R.Evid. 702 provided by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), this court must hold a hearing outside of the presence of the jury to determine the admissibility of results of certain laboratory testing, together with conclusions and opinions derived from those tests. In the government's response at docket entry 3191, the prosecutors agreed that a pretrial hearing to determine the qualifications of prospective witnesses Linda Jones, Paul Rydlund and William Stokes, may avoid lengthy *voir dire* of them when they are called at trial. After review of all of the material submitted, including the exhibits, the court has determined that no pretrial hearing is necessary. The showing required to determine admissibility under Fed.R.Evid. 104(a) will require the production of evidence that should be presented to the jury under Rule 104(e) to assist them in evaluating the credibility and weight to be given to the challenged testimony.

█ The principal dispute centers on FBI laboratory testing for chemical residue on clothing and personal property taken from Timothy McVeigh and analytical testing of Q507, an object taken from the site of the explosion and tested at the FBI lab and at another location. Defense counsel contend that information made known to them through discovery suggests the possibility of contamination of the items tested and the testing equipment; that the FBI laboratory lacked proper protocols and prescribed procedures; that the testing methodologies used were inappropriate and that unqualified persons participated in performing the tests. In sum, the defense argues that the government must prove to the court, outside the presence of the jury, that appropriate scientific methods were properly applied before the test results and conclusions drawn from them can be admitted as relevant and reliable scientific evidence.

The challenged evidence does not involve any new scientific theory and the testing methodologies are neither new nor novel. The government intends to prove that particular chemical elements were found on or in the items tested, using well-recognized qualitative analysis procedures. The government will, of course, first be required to establish the relevance of such evidence by proof of a chain of custody linking these items to persons, places and times of significance to the issues in this case.

The government must then show that the person selecting the testing methodologies was qualified to judge their appropriateness under the circumstances and that the data were developed in a manner consistent with the selected techniques and technology. Finally, the prosecution must show that the person interpreting the test data was qualified to do so.

Discovery has shown that the testing methodologies employed in the qualitative analysis included thin-layer chromatography (TLC), infrared spectroscopy (IR), fourier transform infrared spectroscopy (FTIR), ion chromatography (IC) and X-ray diffraction (XRD). These are all well-known techniques routinely used by chemists to determine the elemental composition of unknown samples. Evaluation of the effectiveness of these methods and the accuracy of the collected data requires a person who has appropriate scientific knowledge and who knows the proper care, use and limitations of the equipment employed. Proof of these foundation matters must be presented before the test results or any conclusions drawn from them may be received in evidence. Opposing counsel may ask *voir dire* questions in the course of such proof.

Opinion testimony based on scientific knowledge and data collected by scientific methods is admissible under Rule 702 only if the court first determines that it has sufficient relevance and reliability under Rule 104(a). Whether a hearing on these preliminary questions must be conducted outside the presence of the jury depends upon whether it is required in the interests of justice under Rule 104(c). Because the accused has the right to have the jury hear evidence relevant to the weight and credibility of opinion evidence, the necessary founda-

tion for admission should be presented to the jury. That procedure avoids the duplication that would result from a pretrial hearing. If the test results and conclusions are excluded, the jury will recognize the reason for the ruling and it is difficult to see that the jury's knowledge that the court rejected evidence offered by the government would prejudice the defendant.

The difference between the court's role in deciding the admissibility of evidence and the jury's role in deciding the probative value of it is not easily defined when scientific opinions are involved, recognizing that qualified persons often reach conflicting conclusions about the proper application of scientific principles in laboratory applications and in the interpretation of test results. In this case, there is no doubt about the pertinence of the government's efforts to find and identify traces of chemical components of materials having explosive potential on the items tested. The question is whether those efforts produced reliable results.

Admission of the conclusions drawn by the government's opinion witnesses does not depend upon the prosecutors convincing the court that the data and the interpretations of it are completely accurate. *Daubert* does not substitute the judge for the jury as the factfinder for scientific issues. It requires only that the court protect the jury from the influence of opinion testimony that does not have a proper foundation in the methods of science.

 The admission and exclusion of real evidence is governed by Fed.R.Evid. 901(a). The proponent must establish the authenticity and relevance of such evidence by proving a chain of custody. The chain of custody need not be perfect for the evidence to be received. The jury must evaluate the import and effect of any defects. *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989). Similarly, scientific tests need not be shown to be infallible to make their results admissible. *United States v. Hicks*, 103 F.3d 837, 846 (9th Cir.1996) (quoting from *State v. Lyons*, 324 Or. 256, 924 P.2d 802, 813 (1996)).

In *United States v. Beasley*, 102 F.3d 1440 (8th Cir.1996), the defendant moved to exclude DNA evidence because of failures in the testing laboratory to observe certain precautions in conducting the analysis. Citing its earlier opinion in *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir.1993), the Eighth Circuit Court of Appeals repeated its admonition that such deficiencies provide a basis for exclusion of an expert opinion only when they so alter a reliable scientific methodology as to "skew" the methodology itself. It was for the jury to determine whether the reliability of the test results was undercut by flaws in performing the laboratory tests. The court has the responsibility to determine the difference between admissibility and weight when considering objections to offers of evidence. The proof necessary for that decision is the same proof required for establishing a proper foundation for offering opinions from those qualified by the required education, training and experience.

The defense has not suggested that the government's principal witness on the subject of explosive residue analysis, Steven Burmeister, is not a qualified chemist capable of selecting appropriate testing methodology, supervising the lab work and interpreting the results. The challenges are to the collection and handling of the items tested; the manner in which the lab work was performed; the care and maintenance of the equipment used and the influence of general operating conditions in the lab. These are matters that may determine the admissibility of the opinion evidence and well may influence the jury's consideration of it if it is received. There is nothing prejudicial to the defendant in reserving ruling on the admission of the opinions and conclusions to be drawn from the testing until it is offered at trial. While Fed.R.Evid. 705 permits the witness to testify to his opinion or inference without first testifying to the underlying facts or data, the court may require otherwise, and in this case, such an order is required for both trials. All of the necessary foundation must be proved and the adequacy of the showing made will be determined before questions asking for opinions and conclusions will be permitted. This procedure provides the functional equivalent of a preliminary hearing, as the court recognized in *United States v. Davis*, 40 F.3d 1069, 1075

(10th Cir.1994). If *voir dire* requires questioning that may be too prolonged or that may include matters inappropriate for hearing by the jury, it may be done during a recess period. If the defendant's objections to qualification of the witness and to the particular offerings of opinions and conclusions require argument, that too may be heard during a trial recess or may be presented in writing.

Upon the foregoing, it is

ORDERED that the defendants' motions for pretrial hearing are denied and the defense objections will be heard during the course of each trial.