F I L E D
**United States Court of Appeals
Tenth Circuit**

**DEC 10 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LARRY EDWARD DEAN and
STELLA LOUISE DEAN ,

Defendants-Appellants.

Nos. 01-7006 and 01-7007
(D. Ct. No. 99-CR-92-B)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **PORFILIO**, and **BRISCOE**, Circuit Judges.

A jury convicted Larry Edward Dean of distribution of methamphetamine and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The district court sentenced him to 168 months imprisonment for each count, to be served concurrently, followed by 36 months of supervised release. The jury convicted Stella Louise Dean of the same charges. The district court sentenced her to 135 months imprisonment for each

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

count, to be served concurrently, followed by 36 months of supervised release. Both defendants appealed.

A jury heard the Deans' cases in a joint trial that was followed by a joint sentencing hearing. Larry and Stella Dean's cases involve the same issues, except for one additional issue in Stella Dean's case. We therefore address them in a joint order and judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

## I. Background

The defendants Larry Dean and Stella Dean are a married couple who, prior to their arrests, shared a residence in Hugo, Oklahoma. On November 30, 1999, informant Sheila Taylor used a hidden video camera to record her purchase of a bag of methamphetamine from Larry and Stella Dean at their home. On December 2, 1999, officers from the Oklahoma Bureau of Narcotics and the Federal Bureau of Investigation executed a search warrant at the Deans' home. The officers seized drugs from the home and from the person of Stella Dean. The Deans were arrested later that month and charged with distribution of methamphetamine and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Following their convictions and a joint sentencing hearing, the district court concluded that the Deans were engaged in joint criminal activity, that each

defendant independently executed certain drug transactions in furtherance of the joint activity, and that the other defendant could reasonably have foreseen those transactions. Therefore, pursuant to section 1B1.3(a)(1)(B) of the Sentencing Guidelines, the district court treated each defendant's independently completed drug transactions as relevant conduct for purposes of determining the other defendant's base offense level.

## II. Discussion

The Deans make three joint arguments. First, they contend that the trial court erroneously failed to suppress evidence seized with a defective warrant. Second, they contend that the trial court made erroneous factual findings as to drug quantity at sentencing. Third, each defendant asserts that the trial court erroneously considered drug transactions at sentencing that involved only the other defendant. In addition, Stella Dean argues that the trial court erred in admitting evidence when there was a gap in the chain of custody. We hold that the trial court did not err in any of these respects.

## A. The Motion to Suppress

Police searched the Deans' house pursuant to a daytime search warrant issued by U.S. Magistrate Judge James H. Payne. Judge Payne issued the warrant in Muskogee, Oklahoma on December 1, 1999 at 5:10 p.m. Police served the warrant at the Deans' residence in Hugo, Oklahoma (approximately 150 miles

from Muskogee) on December 2, 1999, and the return was filed on December 9, 1999. Both a "1" and an "8," one written over the other, were written in the space where the judge enters language commanding officers to perform the search by a specific date. There are no initials next to the change. It is impossible to tell by looking at the warrant which number represents the date originally entered.

The Deans contend that the changed date leaves the warrant without a specified period of time, rendering the warrant defective and requiring suppression of the evidence seized in the subsequent search. We disagree.

At a suppression hearing, the parties stipulated that Judge Payne would testify that: (1) he would not issue a daytime warrant for Choctaw County at 5:10 p.m. to be executed on that date; (2) he normally gives seven days for an execution of a warrant; (3) the number 8 would have been consistent with the time he normally would give for the service of this warrant; (4) he did not recall writing an "8" over a "1" on this particular warrant; and (5) he normally would have initialed any such modification.

When reviewing a denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the government. United States v. Hill, 199 F.3d 1143, 1147 (10th Cir. 1999) (quoting United States v. Hargus, 128 F.3d 1358, 1361 (10th Cir. 1997)).

Federal Rule of Criminal Procedure 41(c)(1) provides that

> [A warrant] shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property or person specified. The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime.

Fed. R. Crim. P. 41(c)(1).

Absent a clear constitutional violation, noncompliance with Rule 41[1] requires suppression of evidence only where "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." United States v. Hugoboom, 112 F.3d 1081, 1087 (10th Cir. 1997) (citations omitted). Nothing here indicates that the search would not have occurred if the date change had been initialed.   The Deans insinuate that the date was possibly changed by an officer after the fact, which would certainly violate the second prong of Hugoboom.  However, they offer no direct evidence to this effect.  The only possible evidence is the "8" written over the "1."  However, the district court found, and the facts clearly support, that December 8 was the operative date.  It is unlikely that Judge Payne would have

---

[1] Since we hold that any violation under these circumstances would not have a remedy, we do not directly address the question of whether there was actually a violation of Rule 41.

issued a daytime warrant at 5:10 p.m. to be served 150 miles away on the same day. These facts are consistent with Judge Payne's accidentally writing the date the warrant was issued ("1") in the blank, realizing his error, and correcting it with an "8." Thus, neither of the prongs from Hugoboom is met, and there is no clear error in the district court's finding. We affirm the district court's denial of the motion to suppress.

B. Credibility of the Witnesses

The Deans contend that Sheila Taylor was an unreliable witness and that the district court committed clear error when it relied upon Taylor's testimony to determine the relevant drug quantity during sentencing. We review a district court's determination of witness credibility for clear error. United States v. Keeling, 235 F.3d 533, 535 (10th Cir. 2000), cert. denied, 121 S. Ct. 2575 (2001).

Taylor confessed to memory problems as the result of drug use and admitted that she did not have specific records of her drug transactions. However, she also provided detailed testimony regarding the amount of drugs she bought from the Deans, and she expressed certainty regarding the amounts she purchased and used. She provided specific instances of her drug use and estimated the frequency of her drug transactions with the Deans. To the extent that her testimony at the sentencing hearing differed from her earlier statement about drug quantity, the court relied on her lower estimates. Another witness,

Amanda Cherry, testified that she and others she knew regularly obtained methamphetamine from Larry and Stella Dean. While Cherry's testimony was not offered or used to increase the drug quantities for sentencing purposes, it did provide corroboration for Taylor's testimony that Larry Dean regularly distributed methamphetamine.

While Taylor was not a perfect witness, there was sufficient basis for finding her testimony about drug quantity reliable. The district court did not commit clear error in crediting her testimony.

C. Use of Relevant Conduct at Sentencing

Each defendant contends that the district court incorrectly considered the other's conduct as relevant conduct for sentencing purposes.

Section 1B1.3(a) in the Sentencing Guidelines Manual directs the sentencing court to determine a defendant's base offense level on the basis of the defendant's acts and omissions, but also "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." The commentary describes this section's application to drug offenses: "[T]he defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly

undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S. Sentencing Guidelines Manual § 1B1.3, cmt. 2.    The district court found that the Deans were engaged in a joint criminal activity, that each had committed acts in furtherance of that activity, and that these acts were reasonably foreseeable by the other. The court therefore treated acts by each defendant as relevant conduct in determining the other defendant's base offense level.

We review for clear error factual findings underlying the district court's determination of the base offense level. United States v. Roederer, 11 F.3d 1467, 1477 (1993). The relevant questions here are whether the attributed conduct was "in furtherance of" a joint activity and whether it was "reasonably foreseeable" by the defendant to whom it was attributed.

There was ample evidence that the Deans, from at least April 1998, [2] were engaged in the "jointly undertaken criminal activity" of providing Taylor with a regular supply of methamphetamine and that each made sales "in furtherance of" that activity. Taylor testified at the joint sentencing hearing that she regularly obtained methamphetamine from Larry and Stella Dean. Taylor further testified that the Deans provided her with about half of her methamphetamine supply each

_____

[2] Taylor testified that she first met Stella Dean and purchased methamphetamine from her in April of 1998. The district court attributed to Stella Dean no conduct that occurred before April 1998.

week. She specifically testified that Larry Dean, or sometimes Stella Dean, delivered drugs to her house or to her place of employment. She explained that when she visited the Deans' home, either Larry or Stella Dean would provide her with methamphetamine. Taylor also testified that, after she had driven someone to Austin to purchase methamphetamine for Larry Dean, Stella Dean came to her home and picked it up. This testimony was sufficient to support a finding by the preponderance of the evidence that the Deans regularly provided Taylor with drugs and that they engaged, both independently and together, in drug transactions in furtherance of this jointly undertaken activity. [3]

The remaining question is whether each defendant could reasonably have foreseen the acts of the other. Imputation of drug quantities does not require that the defendant have had direct involvement in the transactions. U.S. Sentencing Guidelines Manual § 1B1.1(a)(1)(B); United States v. Williams, 897 F.2d 1034, 1041 (10th Cir. 1990).

Taylor testified that she met with the Deans both independently and together from April 1998 until November 30, 1999. She testified that she regularly bought similar amounts of methamphetamine from the Deans, and that

---

[3] We find no merit to the defendants' arguments that each received no benefit from the other's transactions. These were not isolated transactions. Both Deans were engaged in the joint activity of supplying Taylor with methamphetamine, and both Deans benefitted from the maintenance of the profitable relationship.

her purchases were from Larry Dean, Stella Dean, or both. Larry Dean could reasonably have foreseen that Stella Dean would provide the drugs to Taylor, even on occasions where Larry Dean was not present. Similarly, Stella Dean could reasonably have foreseen that Larry Dean would provide methamphetamine to Taylor, even if we accept Stella Dean's assertion that she could not foresee that he would sometimes accept sex as payment, which he did. We therefore hold that the district court did not err in attributing each defendant's conduct to the other for purposes of calculating the base offense level.

D. The Chain of Custody

Stella Dean contends that the district court improperly permitted the government to introduce evidence at trial where the chain of custody had been broken. Agent Brian Veazey seized 6.6 grams of methamphetamine that informant Taylor bought from the Deans on November 30, and he seized 0.39 grams of methamphetamine from Stella Dean during the execution of the search warrant on December 2. Veazey submitted both items to the Oklahoma State Bureau of Investigation (OSBI) laboratory in McAlester, Oklahoma, and they were later moved to the OSBI laboratory in Durant, Oklahoma and tested there. Veazey testified that he sealed the evidence before submitting it to the McAlester laboratory. The forensic chemist who tested the evidence at the Durant laboratory testified that both items were sealed when she received them, that there were no

signs of tampering, and that she broke the seals. The chemist also testified that the initials on the evidence envelopes indicated that the supervisor of the McAlester laboratory had transported the evidence to Durant. There were, however, no submittal sheets with the evidence to show its receipt at the Durant laboratory.

We review a decision to admit evidence for abuse of discretion. United States v. Cardenas, 864 F.2d 1528, 1530 (10th Cir. 1989).

> Before admitting or excluding real evidence, the trial court must consider the nature of the evidence, and the surrounding circumstances, including presentation, custody and probability of tampering or alteration. If, after considering these factors, the trial court determines that the evidence is substantially in the same condition as when the crime was committed, the court may admit it.

Id. at 1531. Absent evidence of tampering, deficiencies in the chain of custody go to the weight of the evidence and not its admissibility. Id.; United States v. Mora, 845 F.2d 233, 237 (10th Cir. 1988).

The only break in the chain of custody involved the transportation from the McAlester laboratory to the Durant laboratory. Although the defendants assert that tampering  may have occurred, there was no evidence to suggest actual tampering. [4]  Moreover, "[t]he trial court need not rule out *every* possibility that

---

[4] The defendant's only specific argument to support the contention that tampering may have occurred is that the total amount of these two items, 6.99 grams, is coincidentally close to 7 grams, which is the amount Taylor thought she

(continued...)

the evidence underwent alteration; it need only find that the reasonable probability is that the evidence has not been altered in any material aspect." Cardenas, 864 F.2d at 1532. We therefore hold that the district court did not abuse its discretion in admitting the evidence.

III. Conclusion

For these reasons, we AFFIRM the rulings of the district court on all issues.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Chief Circuit Judge

---

[4](...continued)
was buying on November 30. Stella Dean argues that this coincidence suggests that the .39 grams seized from her on December 2 may in fact have been taken from the amount Taylor purchased on November 30, reducing the weight of the original amount to 6.99 grams. This coincidence, however, does not alter the reasonableness of the trial court's finding that the evidence had not been altered. There is no evidence to demonstrate that a precise and accurately calibrated scale was used to measure an amount for Taylor's purchase on November 30. Instead, there is reason to be skeptical of the accuracy of a drug distributor's weight measurements.