RENDERED: DECEMBER 22, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0918-MR

PHILLIP TOWNES                                              APPELLANT

v.
APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 20-CR-00099

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND EASTON,
JUDGES.

EASTON, JUDGE: The Appellant, Phillip Townes ("Townes"), challenges his

jury trial conviction for possession of a controlled substance in the first degree with

a sentence of three years to serve. We conclude the circuit court erred by allowing

a lab analyst witness to testify about the results of drug tests performed by another

analyst. The witness had no personal knowledge of any testing of the drugs at

issue. In these circumstances, Townes was denied his constitutional confrontation

right. The same witness's testimony also contributed to an overall inadequate chain of custody to authenticate the lab test results. We reverse the judgment of the Perry Circuit Court and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

In December of 2019, Townes was a passenger in a vehicle stopped by police in Hazard. The arresting officer, Sgt. Steven Everidge ("Everidge"), knew Townes. Everidge checked Townes' name for any outstanding warrants and discovered a warrant for a failure to appear in court.

While placing Townes under arrest, Everidge patted him down and felt something in his right front pants pocket. Everidge told Townes that the items did not feel "like candy." On hearing this, Townes reached into this pocket and attempted to throw the items he retrieved. He was prevented from doing this by Everidge and another officer on the scene. After handcuffing Townes, Everidge retrieved two baggies of white substances from Townes' closed fist and recovered another small baggie which had remained in Townes' pocket. Townes was charged with possession of a controlled substance in the first degree.

Everidge saw a crystal-like substance in the bags Townes tried to get rid of. The way it looked and how it was packaged ("dime bag") was "spot on" for what Everidge typically sees with methamphetamine. On cross-examination, Townes' attorney asked Everidge about his level of experience with drugs.

-2-

Everidge testified he sees methamphetamine "a lot." He was "pretty confident" that what he saw was methamphetamine. Everidge's testimony about his experience and observations was admitted without objection. The context of the questions by Townes' attorney suggested drugs possessed for personal use rather than for trafficking.

After transporting Townes to the police station, Everidge processed the three packages of suspected contraband as evidence. While handling the items, Everidge wore rubber gloves. Everidge prepared documentation, which he explained during his testimony. The contents of these documents would later be corroborated by the lab analyst witness. Everidge attached the documentation to the items and then dropped the evidence in a locked box. The police department used a bank-like night deposit box to secure evidence.

Everidge testified about the limited access to this evidence he and others would have after the deposit. He identified by name the evidence custodian with the police. Everidge explained that a police custodian officer later retrieved the evidence and transported it to the Kentucky State Police lab in London for analysis to determine the contents of the baggies. The documents with the lab confirm the name of the evidence custodian who took the evidence to the lab. This was the same name identified by Everidge.

Jamie Hibbard ("Hibbard"), a forensic scientist at the state police crime laboratory in London, testified that former employee Erin Thorne ("Thorne") conducted the testing on the three packets. Hibbard conducted both administrative and technical peer reviews of Thorne's work. The review ensured that the bar code numbers on the police agency submission matched those on the report. Hibbard examined the evidence to confirm the weights and descriptions of the baggies listed. This confirmed the items were consistent with those listed on the report of what was sent to Thorne and what Thorne's report described as having been tested. But Hibbard himself did not perform any chemical analysis during his reviews.

The defense argued Hibbard did not possess sufficient personal knowledge to testify about the test results. Over defense objection, Hibbard was allowed to read from the report which Thorne prepared. Hibbard informed the jury that Thorne's analysis revealed the three packets contained methamphetamine, cocaine, and a mix of fentanyl, heroin, and cocaine.

The defense also objected to the admission of the report as well as testimony gleaned from it, because the prosecution failed to provide sufficient evidence of the chain of custody of the evidence tested. The police custodian officer who removed the submission from the secure box and transported it to the lab did not testify at the trial. Other than the contents of the forms, there was no direct testimony concerning how the submission arrived at the laboratory in

-4-

London.  Nonetheless the prosecution was allowed to enter the report into evidence.

After the prosecution rested its case at the end of the first trial day, the defense made a motion for directed verdict.  The defense argued the prosecution failed to present sufficient admissible evidence to prove guilt beyond a reasonable doubt.  The trial court denied the motion.

The next morning, the trial court, without explanation on the record, reconsidered its ruling about the lab report.  The trial court disallowed the report as an exhibit for the jury to consider, but the testimony about it could still be considered.  Based on the arguments raised herein, Townes filed a motion for a new trial or for acquittal, which was denied by the trial court.  Townes now appeals.

## STANDARD OF REVIEW

"The standard of review of an evidentiary ruling is abuse of discretion.  The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Cox v. Commonwealth*, 553 S.W.3d 808, 814 (Ky. 2018) (citations omitted).

## ANALYSIS

Townes objected to the introduction of the laboratory report and to Hibbard's testimony as it was dependent upon the report. One basis of the objection was the lack of a sufficient chain of custody for the tested materials.

KRE[1] 901 provides as follows:

> (a)    General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Chain of custody is part of a method used to identify and authenticate an item of evidence. "Establishing chain of custody is particularly important where the object is in the form of a sample of material that is collected by an agent associated with one of the parties and transmitted to a laboratory for scientific analysis." 5 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 9:10 (2023). The chain of custody serves to "insur[e] that the object offered at trial is the very one connected to the party, transaction, or events . . . ." *Id.*

The Kentucky Supreme Court held in *Grundy v. Commonwealth*, 25 S.W.3d 76, 80 (Ky. 2000):

> If the offered item possesses characteristics which are fairly unique and readily identifiable and if the

---

[1] Kentucky Rules of Evidence.

substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the "chain of custody" of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.

Thus, blood samples require a different amount of chain of custody evidence than a gun. This case involved drugs, many of which may look alike. Illegal drugs are not necessarily "fairly unique and readily identifiable." *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989). "For drugs and drug paraphernalia – items which are fungible and not readily identifiable or distinguishable – a stronger foundational showing is required than for non-fungible or readily identifiable evidence, but a perfect chain of custody is not required." *Saxton v. Commonwealth*, 671 S.W.3d 1, 11 (Ky. 2022).

While it may not be necessary to establish an infallible chain of custody for the admission of drug or blood evidence, there must be some attempt to do so.

Even with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to

establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that "the reasonable probability is that the evidence has not been altered in any material respect." *United States v. Cardenas*, 864 F.2d 1528, 1532 (10th Cir. 1989), *cert. denied*, 491 U.S. 909, 109 S. Ct. 3197, 105 L. Ed. 2d 705 (1989). *See also Brown v. Commonwealth*, Ky., 449 S.W.2d 738, 740 (1969). Gaps in the chain normally go to the weight of the evidence rather than to its admissibility. *United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988). Here, however, there was no attempt at all to establish the chain of custody of these blood samples, even though the samples apparently were transferred and stored internally within the hospital, then transferred and stored outside the hospital, first at a laboratory in Louisville, then, presumably, at another laboratory in Nashville. As Justice Palmore aptly put it in *Henderson v. Commonwealth*, *supra*:

> Hence the integrity of the evidence from the time it was relinquished by the investigative officers until it reached the laboratory analyst was not proved. We think that surely it is unnecessary to delve into the literature of the law in order to document the point that this type of carelessness in the development of important evidence during the course of a trial simply will not do. We know it is tedious and time-consuming to trace the integrity of an exhibit; in fact, it is tedious and time-consuming to have a trial at all when we think we know the defendant is guilty anyway, but it is not half as bad a nuisance to do it right the first time as it is to go through the whole process a second time two years later.

*Id.* at 461.

*Rabovsky v. Commonwealth*, 973 S.W.2d 6, 8-9 (Ky. 1998).

The Commonwealth's overall approach to this case illustrates the danger of assumptions. The numerous bench conferences reveal how assumptions led to this reversal. The Commonwealth assumed there would be no issue with the chain of custody for the drug evidence. Although the police evidence custodian was available, the Commonwealth failed to properly list him as a witness. The trial court might have permitted that testimony anyway with proper accommodation to the defense because of the limited and probably uncontroverted nature of this chain of custody evidence, but the trial court was certainly within its discretion to prohibit the testimony.

Another apparent assumption was that, because the lab analyst who performed the tests was now a schoolteacher in another Kentucky county, then it would be acceptable to have another lab analyst testify about the tests performed. As the Commonwealth noted, defendants often stipulate to some chain of custody or lab result issues. This could be a tactical decision of not emphasizing the drugs by having a jury see how much trouble it took to prove that the drugs were drugs.

The fact that an item is a controlled substance is sometimes not what the defense wants to argue about. Even so, no assumption should be made, and without a confirmed stipulation prior to the beginning of a trial, the prosecution should be prepared to present its evidence to show the links in the chain of custody

and to provide for the right of a defendant to confront those who provide testimonial evidence against him, such as the lab technician who personally confirmed the presence of a controlled substance. *See Peters v. Commonwealth*, 345 S.W.3d 838 (Ky. 2011) (because lab testing and conclusions are testimonial in nature providing evidence on an element of a drug possession charge, the right to confrontation typically requires the testimony of the analyst, although an error in this regard may not rise to the level of palpable error).

Having addressed the chain of custody issue, we now turn to a more detailed discussion of the separate issue, the lack of Hibbard's personal knowledge of the testing and its results and the Confrontation Clause. Townes contends his rights under the Confrontation Clause were violated when the trial court allowed Hibbard to testify using the report generated by Thorne, even though Hibbard conducted only peer reviews of the report. Again, the peer reviews did not include a personal retesting of the materials.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" The Due Process Clause of the Fourteenth Amendment incorporates this right to state proceedings in addition to federal prosecutions. This right is further protected in Section 11 of the Kentucky Constitution. Despite textual differences, Kentucky's

appellate courts have not yet held that Section 11 is to be construed differently

from its Sixth Amendment counterpart.

> In recent history, the United States Supreme Court's construction of the Confrontation Clause has undergone a dramatic makeover.  The old rule, as exemplified by *Ohio v. Roberts*,[2] allowed third-party admission of out-of-court testimony if the evidence bore "adequate indicia of reliability."  When a witness against the accused is unavailable for live testimony, the Court ruled that the Constitution allowed the testimony through either a "firmly rooted hearsay exception" in the rules of evidence, or if the testimony contained "particularized guarantees of trustworthiness."  The old rule thus construed basic evidentiary practices as satisfactory for Confrontation Clause purposes.

> But in *Crawford v. Washington*,[3] the Court rejected the *Ohio v. Roberts* position.  Under the *Crawford* rule, "the inquiry is not whether hearsay falls under a deeply rooted exception or has particularized guarantees of trustworthiness; rather, the inquiry is whether the out-of-court statement is 'testimonial' and whether the defendant had an opportunity to cross-examine the statement when it was made."  So *Crawford* introduced a more searching inquiry than the traditional standard – non-testimonial statements may still be examined for reliability, but *testimonial* out-of-court statements from unavailable witnesses are categorically barred from admission under the Constitution unless the defendant had an opportunity for cross-examination.

*Manery v. Commonwealth*, 492 S.W.3d 140, 144-45 (Ky. 2016) (citations omitted).

---

[2] 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

[3] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Thorne did not testify about her lab testing. Townes was denied an opportunity to cross-examine Thorne about her findings. Townes' Confrontation Clause rights were violated when Hibbard was allowed to testify as to Thorne's scientific findings by reciting her findings contained in the report she generated and about which Hibbard possessed no personal knowledge. *Peters*, *supra*.

The trial court did not provide a reason for the ruling allowing Hibbard to testify from the lab report, the same report it later excluded from evidence, again with no reason stated on the record. The reason often given for allowing one member of an organization to testify concerning a document created by another person or persons within the same organization is the document is made and kept in the regular course of business, which suggests suitable neutrality and reliability. After the still recent change in Confrontation Clause law, admission of business[4] or official[5] records cannot deprive a defendant of his confrontation rights.

As part of a business record, mundane aspects of chain of custody entries may be admissible without confrontation. Some records entries simply establish facts for admission of evidence such as who took the drugs to the lab. Such entries in the chain of custody are not necessarily testimonial as would be

---

[4] KRE 803(6) addresses "records of regularly conducted activity" and is often referred to as the business records rule.

[5] KRE 803(8) addresses "public records and reports" which has specific limitations for records of police related investigation.

testing and the results of testing to prove the presence of a controlled substance, an element of the crime being tried. *See, e.g.*, *United States v. Tearman*, 72 M.J. 54 (Armed Forces App. 2013).

But any attempt to justify admission of a lab report of testing conclusions as a business record fails when the document is clearly prepared for testimonial use to prove an element of a criminal charge, as held in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177 (2004).

> The trial court ruled, and the Commonwealth now argues, that the testimony was admissible because it was a record the Commonwealth kept in the normal course of business. We hold that this ruling was in error. Building on its ruling in *Crawford*, the Supreme Court later held:
>
>> Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. *See* Fed. Rule Evid. 803(6). But that is not the case if the regularly conducted business activity is the production of evidence for use at trial. Our decision in *Palmer v. Hoffman*, 318 U.S. 109, 63 S. Ct. 477, 87 L. Ed. 645 (1943), made that distinction clear. There we held that an accident report provided by an employee of a railroad company did not qualify as a business record because, although kept in the regular course of the railroad's operations, it was "calculated for use essentially in the court, not in the business." *Id.*, at 114, 63 S.Ct. 477.
>
> *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321, 129 S .Ct. 2527, 174 L. Ed. 2d 314 (2009). Furthermore, the Court went on to specify in *Bullcoming v. New Mexico*, 564 U.S. 647, 661, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), that "the analysts who write reports

-13-

that the prosecution introduces must be made available for confrontation."

> We are bound by these holdings of the Supreme Court of the United States when it comes to this federal constitutional issue. Therefore, we hold that the trial court erred in allowing the admission of the statement at issue. Having found error, we must now determine if it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").

*Bowling v. Commonwealth*, 553 S.W.3d 231, 241 (Ky. 2018).

It was error to allow Hibbard to testify as his knowledge about the evidence tested and the results came from the report authored by Thorne.[6] Now we must determine whether the error was harmless. It was not.

> Harmless error analysis applied to a constitutional error, such as the Confrontation Clause violation addressed in *Crawford*, involves considering the improper evidence in the context of the entire trial and asking whether there is a "'reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Talbott v. Commonwealth,* 968 S.W.2d 76, 84 (Ky.1998) (quoting

---

[6] Both the prosecution below and the Commonwealth on appeal describe Erin Thorne as being "unavailable." However, there was never any showing of an attempt to serve her with a subpoena. Hibbard testified Thorne left the Kentucky State Police Lab to be a teacher in the Lincoln County School System. If we take judicial notice of any Kentucky map, we can see that the drive time from Lincoln County where the witness now teaches and Perry County where this trial took place is right at two hours. It does not matter for our analysis for this appeal, but the word "unavailable" has meaning in the law. KRE 804(a)(5) deems a declarant unavailable as a witness if he "[i]s absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means." Reasonable means are not satisfied when a party makes no effort to show it attempted to produce the witness. *Justice v. Commonwealth*, 987 S.W.2d 306, 313 (Ky. 1998).

-14-

from *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). A properly preserved constitutional error is reversible, in other words, unless it was "harmless beyond a reasonable doubt." *Id.* (again citing *Chapman*). The question is not simply whether there was sufficient evidence to support the conviction aside from the improper evidence. The question, rather, is whether the improper evidence was of a weight, was of a striking enough nature, or played a prominent enough role in the Commonwealth's case to raise a reasonable possibility that it contributed to the conviction.

*Staples v. Commonwealth*, 454 S.W.3d 803, 826-27 (Ky. 2014).

In the present matter, there is more than a "reasonable possibility" Hibbard's improper testimony contributed to Townes' conviction. Without his testimony, the Commonwealth proffered no other scientific evidence of the illegal nature of the white powder contained in the baggies retrieved from Townes. While it may be the Commonwealth could still argue the surrounding facts and circumstances indicated the contents were contraband, this does not alter the likely impact of the scientific test results heard by the jury.

The Commonwealth points out that convictions involving controlled substances can be obtained and upheld without scientific analysis citing *Miller v. Commonwealth*, 512 S.W.2d 941 (Ky. 1974). But in *Miller*, a nonexpert witness provided testimony concerning the identity of a white powder she witnessed the defendant shoot into the arm of another.

Testimony is competent if given by a witness who has special knowledge of drugs or because of extensive use

-15-

of drugs is qualified as an expert witness on drug culture. To hold otherwise and demand laboratory analysis would defeat the purpose of the statute and allow traffic or transfer of controlled substances to flourish in the secret confines of society. Therefore, the trial court was correct in submitting the case to the jury upon the substance identification by a nonexpert observer.

*Miller*, *supra*, at 943. There was no such evidence in this case.

The Commonwealth was required to prove each element of the crime of possession of a controlled substance in the first degree beyond a reasonable doubt. The Commonwealth must prove the possession of a controlled substance. *See* KRS[7] 218A.1415.[8] Because of the evidentiary errors we have discussed, reversal is required.

---

[7] Kentucky Revised Statutes.

[8] (1) A person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses:

> (a) A controlled substance that is classified in Schedules I or II and is a narcotic drug;
> (b) A controlled substance analogue;
> (c) Methamphetamine;
> (d) Lysergic acid diethylamide;
> (e) Phencyclidine;
> (f) Gamma hydroxybutyric acid (GHB), including its salts, isomers, salts of isomers, and analogues; or
> (g) Flunitrazepam, including its salts, isomers, and salts of isomers.

(2) Possession of a controlled substance in the first degree is a Class D felony subject to the following provisions:

> (a) The maximum term of incarceration shall be no greater than three (3) years, notwithstanding KRS Chapter 532[.]

The question becomes whether the case should be remanded for dismissal or retrial. When a defendant files an appeal, he challenges the validity of the prior proceeding. If error is found, the prior proceedings did not necessarily place the defendant in jeopardy as the concept is applied constitutionally. But there may be circumstances where a total lack of evidence results in a Double Jeopardy bar to a retrial.

In deciding whether to remand for retrial or dismissal, there is an important distinction between insufficient evidence and incompetent evidence considered by the jury. *Merriweather v. Commonwealth*, 99 S.W.3d 448, 453 (Ky. 2003). If the evidence presented, including the evidence erroneously admitted, was enough to sustain the verdict, then the remedy is retrial not dismissal. *See Hobbs v. Commonwealth*, 655 S.W.2d 472 (Ky. 1983). We must consider all the evidence which the jury in this case found sufficient to convince them beyond a reasonable doubt that Townes possessed a controlled substance.

Everidge felt the packages of drugs and commented that they did not feel "like candy." Townes tried to tamper with this evidence by throwing it away, only to be prevented from doing so by the forceful actions of two officers. Townes' actions are circumstantial evidence that what Townes possessed was a controlled substance, and he knew it. *See Smith v. Commonwealth*, 712 S.W.2d 360 (Ky. 1986).

We must also keep in mind that the Commonwealth only had to prove one controlled substance, not the four as indicated on the lab report. If we focus on methamphetamine alone, other competent evidence proved Townes' knowing possession of it. For example, Everidge had experience identifying methamphetamine and how it is packaged. Everidge said he saw a crystal-like substance in the bags Townes tried to get rid of. The way it looked and how it was packaged ("dime bags") was "spot on" for what he usually sees with methamphetamine.

On cross-examination, Townes' attorney asked Everidge about his level of experience with drugs. He sees methamphetamine "a lot." Everidge was "pretty confident" that what he saw was methamphetamine. If for the moment we leave aside the errors in the chain of custody and denial of confrontation, the detailed testimony of the lab analyst left no doubt that the substances tested included methamphetamine as well as three other dangerous substances. The situation here is not insufficient evidence; it is a problem with improperly admitted evidence, including gaps in the chain of custody.

As we have previously explained, a chain of custody need not be perfect. All that is needed is proof that the substances tested were what they are claimed to be, and it is probable that there has been no tampering with the substances since they were seized. In *Helphenstine v. Commonwealth*, 423 S.W.3d

708 (Ky. 2014), a conviction was upheld despite chain of custody concerns, but the court suggested in dicta that a retrial could be prohibited if the Commonwealth "completely abdicated" its job to prove a chain of custody. *Id*. at 717. But this is not such a case.

Everidge had testified in detail how he processed the drugs and put them in a bank-like deposit box. He explained the forms used to send items to the state lab and his part in filling out those forms. Everidge further explained the limited access others would have to this evidence. He identified by name the evidence custodian with the police.

As the lab analyst witness, Hibbard could not testify about things about which he had no personal knowledge, or which otherwise met no hearsay exception. But Hibbard personally conducted two peer reviews for this case. In doing so, he examined documents which are part of the chain of custody, including the one discussed by Everidge. Hibbard checked these same forms which documented the name of the arresting officer and the evidence custodian who brought the items to the lab. Hibbard also looked at the items himself to make sure they were consistent with size and descriptions given for them. Hibbard's explanation of the review process was without objection.

Ultimately, we must carefully consider *Rabovsky*, *supra*. In that case, the Court noted "there was no attempt at all to establish the chain of custody[.]"

*Id*. at 8. Yet the report of blood analysis was admitted into evidence. The Court reversed the case for a new trial. It did not dismiss the charges. *Id*. at 10. The issue in that case was also not insufficient evidence but rather improperly admitted evidence due to a chain of custody failure.

When we compare *Rabovsky* to the present case, the similarity is that evidence was improperly admitted, in part because of a faulty chain of custody. In this case, even though the printed report was admitted and then unadmitted, everything Hibbard had said about the results was still in evidence. When we consider all the evidence admitted, properly or not, there was not such a total lack of any effort to establish the chain of custody or to introduce the lab analysis results as to permit dismissal rather than retrial.

## CONCLUSION

For the reason indicated, the Judgment of the Perry Circuit Court is REVERSED with direction for a new trial of the charge of possession of a controlled substance in the first degree.

THOMPSON, CHIEF JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING: Respectfully, I dissent. Although I agree with the majority that the chain of custody was incomplete and the trial court erred in allowing Hibbard to testify, I believe remand for a new trial in this instance

-20-

would be unjust. Allowing the prosecution to engage in a trial run at a prosecution, only for this Court to direct it where to cure its deficiencies of evidence, would result in disparate fairness and injustice.

The majority holds, and I agree, the trial court erred first in allowing Hibbard to testify, after properly not allowing the laboratory report to be entered into evidence. But this error was compounded when the trial court denied Townes a directed verdict. The majority holds that the testimony of Everidge alone was sufficient for a finding that the substance contained in the baggie was a controlled substance. I disagree.

While the report of the laboratory analysis of the substance was inadmissible, it need not be ignored by us on appeal that the report indicated Everidge was incorrect in his opinion of what the baggies contained: methamphetamine. As it turned out, the baggies contained methamphetamine, fentanyl, and cocaine. And while it may not matter for purposes of the statute prohibiting possession of controlled substances which substances were contained in the baggies as the charge would be the same, it does matter for purposes of what can be considered competent evidence. The fact that Everidge's opinion was at least partially incorrect underscores why prosecutors do not rely solely upon the opinions of law enforcement in determining the chemical makeup of substances found on an accused. I therefore disagree with the majority that Everidge provided

sufficient testimony concerning the identity of the substances seized from Townes for the prosecution to have survived directed verdict.

The only competent proof on an element of the offense was premised upon the improper evidence adduced by Hibbard, which the majority found was admitted by error of the trial court. If the trial court ruled properly, the prosecution's only competent evidence on an element of the offense would have been excluded and directed verdict would have been entered.

In *Hobbs v. Commonwealth*, the inquiry before the Court was whether the prosecution adduced sufficient proof to support a finding of guilt on the charge of being a persistent felony offender. 655 S.W.2d 472, 473 (Ky. 1983). This Court reversed Hobbs' conviction and remanded for a new proceeding on PFO. Hobbs then sought discretionary review from the Kentucky Supreme Court. The Supreme Court held when a trial court errs in admitting evidence, remand for a new trial is proper and double jeopardy is not implicated. "We are not disposed to hold that an error by a trial court in the admission of testimony in evidence precludes a retrial when an appellate reversal is procured by a defendant on that ground. In such a case, the defendant is entitled only to an opportunity to obtain a fair readjudication of his guilt free from error." *Id*.

However, since the *Hobbs* decision, the Supreme Court has recognized the fundamental unfairness of allowing the prosecution a second bite at

the apple. "We recognize that the Commonwealth could have presented evidence that Cohron had been charged with felonies at the time of the June 12 escape. But the focus is upon the evidence that was presented and not upon the evidence that could have been presented." *Cohron v. Commonwealth*, 306 S.W.3d 489, 497-98 (Ky. 2010). In *Cohron*, the prosecution failed to prove an element which would support a charge of escape in the second degree rather than escape in the third degree. The element separating the two charges was whether Cohron was facing a felony at the time of his escape, an essential element of second-degree escape. On remand, the Court held it would be a violation of the prohibition against double jeopardy to allow the prosecution a second bite at the apple and directed the trial court to only allow retrial on the lesser charge of escape in the third degree, not requiring evidence of a pending felony charge. In so doing, the Court cited *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 2147, 57 L. Ed. 2d 1 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").

In the present case, I would hold there was a failure to provide sufficient evidence. The Commonwealth wholly failed to provide evidence sufficient to support the admission of the laboratory evidence. And in this case,

like *Cohron*, the prosecution had every opportunity to present the evidence, but in the words of the United States Supreme Court, "it failed to muster." *Burks*, *supra*.

The morning of trial, before *voir dire*, the prosecution was put on notice Townes was questioning whether there would be evidence to support finding a proper chain of custody. Yet, the prosecution made no effort whatsoever to provide the evidence, nor any attempt to call the author of the laboratory report. There is no excuse for the prosecution's total failure to provide sufficient evidence to support their case and it would be the height of injustice to allow it to do so on remand, this Court providing a roadmap of trial preparation through its opinion.

I would hold the Commonwealth "completely abdicated its responsibility to prove a proper chain of custody in this case." *Helphenstine v. Commonwealth*, 423 S.W.3d 708, 717 (Ky. 2014). As the Supreme Court observed in *Helphenstine*, a trial court has adequate remedies available when a chain of custody is fatally flawed. But in Townes' case, the trial court erred in not properly excluding the report *and* the testimony derived from it. *Id.* The trial court realized the lab report was not admissible, but only after Hibbard used it as the basis of his testimony of which he possessed no personal knowledge, precluding Townes from confronting evidence against him. The trial court erred and failed to protect Townes' rights. I forward that the only just solution would be not to allow the prosecution a second bite of the apple.

-24-

As the Kentucky Supreme Court recognized in *Commonwealth v. Davidson*, "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." 277 S.W.3d 232, 235 (Ky. 2009) (citing *Burks*, *supra*, at 18, 98 S. Ct. at 2150-51). But "double jeopardy does not bar a retrial on the same offense when reversal is due to trial error because it does not imply the government has failed to prove its case." *Id.* (citing *Burks*, *supra*, at 15, 98 S. Ct. at 2149).

I would hold in the present case the admissible evidence presented by the prosecution was legally insufficient. I would also find the trial court erred in not granting a directed verdict as there was not sufficient admissible evidence to support the prosecution's case going to the jury. The trial court recognized the laboratory report was not admissible, but too late, having already allowed the prosecution's witness to testify to contents of the inadmissible report. The only option available to the trial court to ameliorate the error was to enter directed verdict and I would hold it was error not to do so.

In the absence of any case law directly on point a just determination must be desired, as supported by the law and the decisions of our Supreme Court. In this case, where the trial court recognized its error in allowing the report only after that report was the sole basis of the testimony of the only proper proof on an element (*i.e.*, the identification of the controlled substances involved) the court

further erred in not then entering a directed verdict. The basis for the exclusion of the report and the testimony was a want of evidence, evidence the prosecution was charged with providing. It would be unjust to allow the prosecution to benefit from their failure to present sufficient evidence and receive a second opportunity to do so. I would reverse with instructions to dismiss the charges.

BRIEFS FOR APPELLANT:

Roy Alyette Durham, II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky